Frederic C. TOWERS, Appellant,

v.

ADVENT SOFTWARE, INC., Appellee.

No. 90–1097.

United States Court of Appeals, Federal Circuit.

Sept. 6, 1990.

Helen Hill Minsker, of Beveridge, De-Grandi & Weilacher, Washington, D.C., argued for appellant. With her on the brief was John T. Roberts.

James L. Warren, of Pillsbury, Madison & Sutro, San Francisco, Cal., argued for appellee. With him on the brief were Kevin M. Fong and Marina H. Park.

---

*Circuit Judge Markey vacated the position of Chief Judge on 27 June 1990.

Before MARKEY, Circuit Judge,* BENNETT, Senior Circuit Judge, and CONTI, Senior District Judge.**

BENNETT, *Senior Circuit Judge.*

Frederic C. Towers (Towers) has appealed the decision of the Trademark Trial and Appeal Board of the Patent and Trademark Office (Board) dismissing Towers' petition for cancellation of a trademark registration owned by Advent Software, Inc. (Advent). We affirm.

## BACKGROUND

Advent is the owner of Registration No. 1,347,405 for the mark THE PROFESSIONAL PORTFOLIO for computer programs for use in the field of financial management. The registration claimed a date of first use in December 1983.

Towers alleged in his petition for cancellation that he had used the mark THE PROFESSIONAL PORTFOLIO SYSTEM since November 1982 in connection with his computer-based portfolio valuation system marketed under the term VALPORT. THE PROFESSIONAL PORTFOLIO SYSTEM is not a registered mark. Towers also alleged that contemporaneous use of the terms is likely to result in confusion, mistake, or deception and that because he had used his designation first, Advent's registration should be cancelled.

The Board first held that, assuming Towers had trademark rights in THE PROFESSIONAL PORTFOLIO SYSTEM, there was a likelihood of confusion between the parties' marks. The Board found that Towers' and Advent's products were legally identical and that both were marketed to the same customers through the same trade channels. The parties have not challenged on appeal the Board's "likelihood of confusion" determination.

The Board then considered the priority of acquisition of trademark rights. The Board stated that under *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209

---

** Senior District Judge Samuel Conti of the Northern District of California, sitting by designation.

USPQ 40 (CCPA 1981), a petitioner in a trademark cancellation proceeding who alleges likelihood of confusion under section 2(d) of the Lanham Act (15 U.S.C. § 1052(d) (1988)) must establish that the term he claims to be his mark is distinctive of his goods, whether inherently or through the acquisition of secondary meaning. The Board found that Towers' term was descriptive, rather than suggestive, and thus was not inherently distinctive. The Board also found that based on Towers' limited use of THE PROFESSIONAL PORTFOLIO SYSTEM, Towers had not shown that the term had acquired secondary meaning prior to December 1983, when Advent began to use its mark. Therefore, the Board held that Towers had not established a valid cause of action to cancel Advent's registration pursuant to section 2(d) of the Lanham Act.

The Board observed that the terms were quite similar and that the registrant was seeking to "play both sides of the street" by arguing that its own mark was valid but Towers' term was merely descriptive and without secondary meaning. However, the Board also observed that Towers had in no way sought to challenge the registration on the basis that Advent's mark was merely descriptive of its product. Therefore, the Board felt obligated to treat Advent's registered mark as functioning as a trademark.

## ISSUES

1. Whether the Board clearly erred in finding Towers' term THE PROFESSIONAL PORTFOLIO SYSTEM to be descriptive of computer-based portfolio valuation systems.

2. Whether the Board erred in requiring Towers to show that his unregistered term was distinctive of his goods.

## DISCUSSION

### A. *Descriptiveness*

■ Whether a mark is descriptive is a question of fact. *In re Bed & Breakfast Registry*, 791 F.2d 157, 160, 229 USPQ 818, 819 (Fed.Cir.1986). The findings of the Board on factual issues cannot be set aside unless clearly erroneous. *Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1578–79, 222 USPQ 665, 666–67 (Fed. Cir.1984). In this case, the Board did not clearly err in finding the term THE PROFESSIONAL PORTFOLIO SYSTEM was descriptive of computer-based portfolio valuation systems.

The Board observed that, in this case, Towers' term was essentially the generic term "portfolio valuation system" with the addition of the word "professional" and the deletion of the word "valuation." The Board found that the word "professional" served to convey information immediately to the purchaser that the product possesses professional capabilities and hence is able to meet the needs of investment professionals. According to the Board, the absence of the word "valuation" did not preclude a finding that the term was descriptive. Towers' term informed prospective purchasers that his software assisted in the management of portfolios, as opposed to doing any one of the thousands of other functions performed by computer software. The Board also relied on deposition testimony of an employee of a licensee, who testified that the term "describes [the product] as a portfolio system." In addition, Mr. Towers, who in response to the question "In your mind does THE PROFESSIONAL PORTFOLIO SYSTEM describe what VALPORT is?" replied, "Well, portfolio system clearly does."

Towers first argues that "portfolio system" encompasses much more than a portfolio valuation system, so the term is not merely descriptive. However, as set forth above, ample evidence supports the Board's finding that Towers' term directly conveys information concerning the function, characteristics, purpose or use of his product, and that therefore the term is descriptive. *See In re Abcor Dev. Corp.*, 588 F.2d 811, 813, 200 USPQ 215, 217 (CCPA 1978).

■ Towers' principal argument is based on the similarity between his term and Advent's mark. He argues that because the Patent and Trademark Office permitted registration of Advent's mark without a

showing of secondary meaning, that term is at least suggestive of the software product. Towers asserts that because his term is so similar, it is also at least suggestive. Towers' argument is unpersuasive. As the Board recognized, Towers chose not to challenge Advent's registration under section 2(e) as being descriptive; therefore, the Board treated Advent's term as functioning as a trademark. The degree of descriptiveness of Advent's mark was not at issue. Moreover, the contexts in which the marks are used are different. Advent uses THE PROFESSIONAL PORTFOLIO as its primary mark. Towers uses THE PROFESSIONAL PORTFOLIO SYSTEM as tag-line descriptor following its primary VALPORT mark. Finally, we note that while the marks are superficially similar, Advent's registered mark omits the word "system." The terms are different as a whole and are used differently by the parties to designate their goods. Towers cannot rely on the PTO's act of registering Advent's mark to support the argument that his own term is not descriptive.

## B. *Requirement That Towers' Unregistered Term Be Distinctive*

■■■ The basis for Towers' petition for cancellation is the allegation under section 2(d) of a likelihood of confusion between Advent's mark and his own "mark ... previously used."[1] The Board held that Towers had not established a valid cause of action for cancellation under section 2(d) because Towers had not shown that his term was distinctive of his goods. The Board relied on *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981). That case involved a trademark registration opposition proceeding. The CCPA held that "if an opposer's alleged means of trade designation is not

distinctive—does not identify source—then there is no basis upon which to compare such a thing with the applicant's mark to determine whether confusion as to source is likely." *Id.* at 1321, 209 USPQ at 44. The court reasoned as follows:

[T]he proper focus of § 2(d) is not on "mark" or "trade name," but upon the phrase, "likely * * * to cause confusion, or to cause mistake or to deceive." We also observe that the inquiry is not simply whether confusion is likely, but whether confusion as to source is likely. Further, the issue is not merely whether public confusion as to source is likely, but whether the identification of source results from trade identity rights in opposer which the law will recognize.

Under section 2(d), as utilized in an opposition, confusion, or a likelihood thereof, is not recognized where one claiming to be aggrieved by that confusion does not have a right superior to his opponent's, or where he has not proved that that which he claims identifies him as the source of goods or services actually does so.

*Id.* at 1322, 209 USPQ at 44–45 (citations omitted). *Accord Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1566, 4 USPQ2d 1793, 1798 (Fed.Cir.1987); *Avtex Fibers, Inc. v. Gentex Corp.*, 223 USPQ 625, 626 (TTAB 1984). Under the rule of *Otto Roth*, a party opposing registration of a trademark due to a likelihood of confusion with his own unregistered term cannot prevail unless he shows that his term is distinctive of his goods, whether inherently or through the acquisition of secondary meaning or through "whatever other type of use may have developed a trade identity." *Otto Roth*, 640 F.2d at 1320, 209 USPQ at 43. The *Otto Roth* rule is appli-

---

1. When this action arose, section 2(d) of the Lanham Act provided:

   "No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

   \* \* \* \* \* \*

   (d) Consists of or comprises a mark which so resembles a mark registered in the Patent

and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive...." 15 U.S.C. § 1052(d) (1982).

The 1988 Trademark Act amendments are inapplicable in this case.

cable to trademark registration cancellation proceedings as well.

Before *Otto Roth,* the CCPA decided *In re Clorox Co.,* 578 F.2d 305, 198 USPQ 337 (CCPA 1978). *Clorox* involved an ex parte rejection of an application for Principal registration on the basis of a previous registration on the Supplemental Register. The court held that under section 2(d), "a mark registered in the Patent and Trademark Office" includes marks registered on the Supplemental Register and that such terms may be used as a basis for refusing registration under section 2(d) due to a likelihood of confusion. The CCPA rejected the argument that a term registered on the Supplemental Register must be shown to have acquired secondary meaning before it can support a conclusion that confusion is likely.[2] The *Clorox* rule has been reaffirmed by this court. *In re Research & Trading Corp.,* 793 F.2d 1276, 230 USPQ 49 (Fed.Cir.1986).

The appellant also cites *Books on Tape, Inc. v. Booktape Corp.,* 836 F.2d 519, 5 USPQ2d 1301 (Fed.Cir.1987). In that case, a party using the term BOOKS ON TAPE as its company name sought cancellation of a Supplemental Registration of the term BOOKTAPES. The court held that the petitioner's term was not generic and that it had established a trade identity in the term as its company name. *Id.* at 520, 5 USPQ2d at 1303. Therefore, as the prior user, it had standing to bring the cancellation proceeding. Nevertheless, the court in dicta suggested that a prior user may successfully seek cancellation of the registration of a descriptive term on the Supplemental Register on the basis of a likelihood of confusion, even though the prior user's term has not acquired secondary meaning. *Id.* at 520, 5 USPQ2d at 1302.

While the cases are procedurally distinguishable, they have seemingly inconsist-ent results. Under the reasoning of *Otto Roth,* the proper focus of section 2(d) is not on "mark" or "trade name" but on whether there is a likelihood of confusion as a result of trade identity rights that the opposer/petitioner has acquired. However, under *Clorox,* likelihood of confusion can be found even if a term is merely descriptive and does not identify source: Registration on the Supplemental Register is sufficient, and a showing of trade identity rights in the form of secondary meaning is unnecessary. The *Books on Tape* dictum suggests a similar result.

The appellant in this case suggests that we resolve this problem he sees by holding that the prior user of a term alleging a likelihood of confusion under section 2(d) need only show the degree of distinctiveness that would permit registration on the Supplemental Register; that is, that the term is "capable of distinguishing" his goods or services. The appellant argues that the greater showing required by *Otto Roth* is inconsistent with the statute, which does not distinguish between "marks registered" cited by the PTO to bar registration and "marks previously used" cited by an opposer/petitioner in an inter partes proceeding. Towers also suggests that we reconsider the decision in *Otto Roth* in view of *Clorox* and *Books on Tape.*

Towers' arguments are unpersuasive. *Otto Roth* is clear in its holding. Section 2(d) bars registration, or serves as a basis for cancellation, if there is a likelihood of confusion as to source. As to an unregistered term, such a likelihood of confusion results when there are trade identity rights in the prior user's term. Those trade identity rights arise when the term is distinctive, either inherently or through the acquisition of secondary meaning. To the extent there is a different result in an ex parte

---

2. The result in *Clorox* has been characterized by Professor McCarthy as "somewhat bizarre." 1 J. McCarthy, *Trademarks and Unfair Competition* § 19:8 at 888 (1984). He points out that a term on the Supplemental Register is not, strictly speaking, a "mark" because it is only "capable" of becoming a mark upon the acquisition of secondary meaning. Thus, the holding in *Clo-* rox has the result that a "non-mark" is used to prevent Principal registration of a "real mark" to another party. As shown in *Clorox,* that result is supported by the plain terms of the statute. The result is also supported by the legislative history. *See Ex parte Jacobson & Sons, Inc.,* 97 USPQ 465 (Ch. Exam.1953).

proceeding if the first term is registered on the Supplemental Register, such a result may be an added advantage of federal registration. *See Universal Foods Corp. v. Otto Roth & Co.*, 215 USPQ 1140, 1143–44 (TTAB 1982).

The Board did not err in requiring Towers to show that his descriptive term had acquired secondary meaning before Advent adopted its mark. We therefore affirm.

## COSTS

No costs.

AFFIRMED.