**CREATIVE ARTS BY CALLOWAY, L.L.C., d/b/a C.A.B. Calloway, L.L.C., Plaintiff–Appellant,**

v.

**Christopher BROOKS, d/b/a The Cab Calloway Orchestra, Defendant–Appellee.**

**No. 02–7050.**

United States Court of Appeals, Second Circuit.

Oct. 11, 2002.

Marc A. Karlin, Karlin & Karlin, Los Angeles, California, for Plaintiff–Appellant.

Barbara A. Solomon, Fross, Zelnick, Lehrman & Zissu, New York, New York, for Defendant–Appellee.

Present JACOBS and POOLER, Circuit Judges, and BAER, District Judge.*

**SUMMARY ORDER**

Appeal from judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, Judge) granting Defendant's motion for summary judgment and denying Plaintiff's motion for a preliminary injunction.

---

\* The Honorable Harold Baer, Jr., United States District Judge for the Southern District of New York, sitting by designation.

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is **AFFIRMED.**

This trademark infringement action arises out of Defendant–Appellee Christopher Brooks' use of the name "Cab Calloway." Cab Calloway, born Cabell Calloway III on December 25, 1907, was a jazz musician who performed solo, with a small ensemble under the name "Cab Calloway and The Cab Jivers," and with big bands under the names "Cab Calloway and The Hi De Ho Orchestra," "Cab Calloway and His Famous Orchestra," and "Cab Calloway and The Cotton Club Orchestra." Cab Calloway died November 18, 1994 and was survived by his widow, Zulme Calloway, and several children and grandchildren, including Brooks, his oldest grandson from an earlier marriage.

Both Zulme Calloway and Brooks have sought to preserve the musical legacy of Cab Calloway. In 1998, Brooks formed "The Cab Calloway Orchestra," which plays vintage Cab Calloway songs using the original arrangements. Brooks also performs with smaller ensembles, titled "The Cab Calloway Band," "The Cab Calloway Duo (or Trio)," or "Calloway Brooks and The Cab Jivers." Brooks, who sometimes uses the stage names "Calloway Brooks" or "Christopher Calloway Brooks," has performed over 150 concerts and, between 1999 and 2001, released two compact discs and a video tape of his performances.

Zulme Calloway and several other relatives formed Creative Arts by Calloway, L.L.C. ("Creative Arts") on December 25, 2000. The Calloway family created Creative Arts to manage the rights associated with Cab Calloway's name, likeness, voice, and intellectual property. Creative Arts maintains that Cab Calloway's will transferred his trademark rights in the name "Cab Calloway" to Zulme Calloway, who subsequently transferred them to Plaintiff–Appellant.

On April 16, 2001, Creative Arts filed suit against Brooks, alleging that his use of the name "Cab Calloway" constitutes: 1) common law service mark infringement; 2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); 3) service mark dilution in violation of New York General Business Law §§ 368–c, d; and 4) unfair business practices in violation of New York General Business Law §§ 349, 350. Creative Arts also sought a preliminary injunction to prohibit Brooks from doing business as "The Cab Calloway Orchestra." The district court granted Brooks summary judgment on Creative Arts' claims in their entirety, and denied Creative Arts' motion for a preliminary injunction, on the grounds that: 1) there is no evidence that Cab Calloway had a common law service mark in his name, as there is no evidence that the name ever acquired secondary meaning; 2) assuming Cab Calloway had such a mark, he did not transfer it in conjunction with an ongoing business, rendering any assignment invalid; and 3) Brooks' use of the name "Cab Calloway" is protected as fair use. Creative Arts appeals the district court's judgment.

Regardless of whether the name "Cab Calloway" acquired secondary meaning during the performer's lifetime, Creative Arts cannot prevail because any trademark assignment to Zulme Calloway would have been invalid. A trademark is merely a symbol of goodwill and cannot be sold or assigned apart from the goodwill it symbolizes. *Marshak v. Green,* 746 F.2d 927, 929 (2d Cir.1984) (citing Lanham Act, § 10, 15 U.S.C.S. § 1060). As goodwill is inseparable from the underlying business with which it is associated, rights in a trademark cannot be transferred "in gross," or apart from an ongoing business.

See *id.* ("There are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable."). *See also Berni v. International Gourmet Restaurant, Inc.,* 838 F.2d 642, 646–47 (2d Cir.1988). Moreover, the assignee must continue to offer products or services that are "substantially similar" to those of the assignor. *Marshak,* 746 F.2d at 930. *See also Visa U.S.A., Inc. v. Birmingham Trust Nat. Bank,* 696 F.2d 1371, 1376 (Fed.Cir.1982) ("[T]he transfer of goodwill requires only that the services be sufficiently similar to prevent consumers of the service offered under the mark from being misled from established associations with the mark.") (internal quotation marks omitted).

In the instant case, Cab Calloway was not operating a going concern at the time of his death, precluding the transfer of a mark. Creative Arts argues that Cab Calloway was in the business of marketing his entertainment services. "Entertainment" may be considered a service in connection with the law of service marks. *See Smith v. Montoro,* 648 F.2d 602, 605 (9th Cir. 1981) (citations omitted); *Estate of Presley v. Russen,* 513 F.Supp. 1339, 1363 n. 31 (D.N.J.1981) (citations omitted). However, Cab Calloway's activities were not organized as a business that could have been transferred to his widow.

Creative Arts argues that Cab Calloway transferred his entertainment business to Zulme Calloway, because retailers continue to sell his music and audiences can watch his television and movie appearances. However, it is undisputed that various record companies own the rights to the masters of Cab Calloway's songs, and there is no evidence that Creative Arts owns the rights to any of Cab Calloway's public appearances.

The Court has considered Creative Arts' remaining arguments on this issue and finds them to be without merit. As there is no evidence that Cab Calloway operated a going concern at the time of his death, the Court need not reach the issue whether Brooks' use of the name "Cab Calloway" constitutes fair use. We note, however, that it is doubtful Brooks' naming of his orchestra would fall within this Court's jurisprudential definition of fair use, as he apparently is using the name "Cab Calloway" as part of his own trademark, "The Cab Calloway Orchestra." *See Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.,* 125 F.3d 28, 30 (2d Cir. 1997) ("The defense [of fair use] permits others to use protected marks in descriptive ways, but not as marks identifying their own products.") (citing *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir.1995)).