This Opinion is a
Precedent of the TTAB

Hearing: September 27, 2017                    Mailed: February 22, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*RxD Media, LLC*

*v.*

*IP Application Development LLC*

_____

Opposition No. 91207333
Opposition No. 91207598

_____

Cecil E. Key of DiMuroGinsberg, P.C
   for RxD Media, LLC.

Dale M. Cendali of Kirkland & Ellis LLP
   for IP Application Development LLC.

_____

Before Bergsman, Wellington and Pologeorgis,
   Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

IP Application Development LLC ("Applicant") filed two applications seeking registration on the Principal Register of the mark IPAD (in standard characters), for the services listed below:

A. Application Serial No. 77927446 (Opposition No. 91207333) (the Class 35 listing presents an excerpt only):[1]

> A wide variety of activities categorized in International Class 35, such as, but not limited to, "computerized database and file management; data processing services; providing business and commercial information over computer networks and global communication networks;" *etc*.;
>
> Storage of electronic media, namely, images, text, video, and audio data, in Class 39; and
>
> Computer services, namely, creating indexes of information, sites and other resources available on computer networks; searching and retrieving information, sites, and other resources available on computer networks for others; recording data for others on optical, digital and magnetic media for electronic storage; computer service, namely, acting as an application service provider in the field of knowledge management to host computer application software for the collection, editing, organizing, modifying, book marking, transmission, storage and sharing of data and information according to user preferences; providing an online searchable database of text, data, image, audio, video, and multimedia content featuring information in the fields of computer hardware and software development, technology development, and consumer electronics, in Class 42.

B. Application Serial No. 77913563 (Opposition No. 91207598) (relevant excerpts in each class provided):[2]

> A wide variety of activities categorized in International Class 38, such as, but not limited to, "telecommunication access services, communications by computer terminals,

---

[1] Filed on February 3, 2010, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce and pursuant to Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d), based on Canadian Application No. 1466862 filed January 25, 2010.

[2] Filed on January 16, 2010, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), Act based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce and pursuant to Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d), based on Application No. 41168 filed July 16, 2009 in Trinidad and Tobago.

electronic transmission of data and documents among users of computers; provision of telecommunications access and the Internet; providing email services; transmission of data and of information by electronic means, namely, by computer, … electronic mail, … communications satellite or electronic communication means; electronic transmission of data, namely, transmission of data by digital audio-visual apparatus controlled by electronic data processing apparatus or computers;" *etc*.; and

A wide variety of activities categorized in International Class 42, such as, but not limited to, "providing web-sites, via a global computer network, to enable users to program the scheduling of audio, video, text and other multimedia content, including music, concerts, videos, radio, television, news, sports, games, cultural events, and entertainment-related programs as they will be aired; design and development of computer hardware and software; computer hardware and software consulting services; rental of computer hardware and software apparatus and equipment; providing search engines for obtaining data via communications networks; providing search engines for obtaining data on a global computer network;" *etc*.

In response to refusals to register IPAD under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that IPAD is merely descriptive of the activities in the recitation of services,[3] Applicant amended the applications to seek registration under the provisions of Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f). Applicant submitted evidence purportedly showing that the IPAD mark had acquired distinctiveness for goods, and that the acquired distinctiveness of Applicant's mark for electronic tablet devices and accessories will transfer to its

---

[3] As the basis for the refusal that IPAD is merely descriptive, the Trademark Examining Attorney contends that IPAD is the combination of two descriptive terms: the letter "I" denoting "Internet" and the word "Pad" referring to a pad computer. Because IPAD directly conveys the meaning of an Internet pad computer, it is merely descriptive of computer related services developed for Internet computer pads. April 23, 2010 Office Action (Serial No. 77913563) (TSDR 7-9) and April 23, 2010 Office Action (Serial No. 77927446) (TSDR 3-4).

proposed services upon use of the mark for the services.[4] *See* Trademark Manual of Examining Procedure (TMEP) § 1212.09(a) (October 2017).

RxD Media, LLC ("Opposer") opposes registration of the mark in both of Applicant's applications under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark so resembles Opposer's previously used mark IPAD for "providing temporary use of a web-based software application for mobile-access database management whereby users can store and access their personal information"[5] as to be likely to cause confusion, mistake or deception.

Applicant, in its Answers, denied the salient allegations in the Notices of Opposition. As an affirmative defense, Applicant alleged that Opposer's mark is merely descriptive and has not acquired distinctiveness.[6] However, pleading this as an affirmative defense was unnecessary, since establishing that its unregistered mark is distinctive is an element of Opposer's case in chief and Applicant need not have pleaded descriptiveness and lack of acquired distinctiveness to put Opposer on notice that evidence of these issues might be entered at trial by Applicant to counter any evidence of distinctiveness presented by Opposer.

Proceedings were consolidated in the Board's July 15, 2013 Order.[7]

---

[4] Applicant's July 14, 2011 Response to Office Actions in both applications.

[5] Notices of Opposition ¶1 (1 TTABVUE 4).

[6] 4 TTABVUE 4. While Applicant also asserted laches, acquiescence and estoppel as affirmative defenses, because Applicant did not argue them in its brief, they are waived. *Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.,* 107 USPQ2d 1750, 1753 n.6 (TTAB 2013), *aff'd* 565 Fed. Appx. 900 (Fed. Cir. 2014).

[7] 12 TTABVUE.

## I.   Preliminary Issues

### A.  Irrelevant testimony and evidence.

Simply put, the parties introduced into the record thousands of pages of testimony and other evidence without regard to what they needed to prove, apparently in the hope that in wading through it, we might find something probative. This is not productive. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The case was neither prosecuted nor defended based on any clear theory of the case. Neither party made a concise and compelling evidentiary showing, and neither was judicious in the introduction of only relevant testimony and evidence.[8] *See, e.g., Sheetz of Delaware Inc. v. Doctor's Associates Inc.*, 108 USPQ2d 1341, 1344 n.5 (TTAB 2013) ("A larger record is not necessarily a better record."); *Carefirst of Maryland Inc. v. FirstHealth of the Carolinas, Inc.*, 77 USPQ2d 1492, 1495 (TTAB 2005) ("It is simply inconceivable to the Board that the issues herein warranted either a record of this size or the large number of motions relating thereto."); *see also* Trademark Board Manual of Procedure (TBMP) § 702.05 (June 2017) and authorities cited therein.

Most of the testimony and evidence in this excessively large record is irrelevant. As discussed in the "Priority" section, because Applicant's applications are based on intent to use and Section 44(d), Applicant is entitled to rely on the filing dates of its

---

[8] This is especially troubling because Applicant correctly identified as an issue of the case whether Opposer's IPAD mark was distinctive, either inherently or through acquired distinctiveness, as of Applicant's priority dates (January 16, 2009 and January 25, 2010). Applicant's Brief, p. 7 (119 TTABVUE 9).

foreign applications for its constructive priority dates. The only claim brought by Opposer is likelihood of confusion; there is no claim that Applicant's marks are merely descriptive and have not acquired distinctiveness. Therefore, Applicant's asserted post-filing date commencement of actual use of its IPAD mark for the services at issue and whether and when Applicant's IPAD mark acquired distinctiveness have no relevance in this proceeding.

Moreover, because Applicant is entitled to rely on its constructive priority filing dates (*i.e.,* July 16, 2009 and January 25, 2010), any testimony and evidence from Opposer relating to events or documents after those dates (*e.g.,* dictionary definitions with a post-2010 copyright, third-party websites printed or posted after January 25, 2010, *etc.*) are irrelevant for purposes of determining whether Opposer has acquired a prior proprietary interest in its IPAD mark (*i.e.,* whether and when Opposer's mark, if merely descriptive, acquired distinctiveness). Therefore, these post-January 25, 2010 materials have been given no consideration.

B.  Numerous objections lodged by the parties.

The parties have lodged numerous objections. None of the evidence sought to be excluded is outcome determinative. Moreover, the Board is capable of weighing the relevance and strength or weakness of the objected to testimony and evidence, including any inherent limitations. As necessary and appropriate, we will point out any limitations in the evidence or otherwise note that the evidence cannot be relied upon in the manner sought. In doing so, we have kept in mind the various objections raised by the parties and we have accorded whatever probative value the subject

testimony and evidence merit. *See Luxco, Inc. v. Consejo Regulador del Tequila, A.C.,* 121 USPQ2d 1477, 1479 (TTAB 2017). We have noted where we have not considered evidence proffered.

C.  The parties failed to cite to the Board's docket system – TTABVUE

The parties failed to cite to TTABVUE docket entries in their briefs. Because of the excessive size of the record and the improper designation of testimony and evidence as confidential,[9] this failure made reconciling their references to evidence difficult and inordinately time-consuming, placing the persuasiveness of their presentations at risk. The parties generally cited to evidence by document title and paragraph number, transcript page number, or Bates number, and therefore they are directed to the guidance in *Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014):

> Because the Board primarily uses TTABVUE in reviewing evidence, the Board prefers that citations to material or testimony in the record that has not been designated confidential include the TTABVUE docket entry number and the TTABVUE page number. For material or testimony that has been designated confidential and which does not appear on TTABVUE, the TTABVUE docket entry number where such material or testimony is located should be included in any citation.

*See also* TBMP §§ 106.03, 801.01, 803.03 (June 2017).

---

[9] Because, as here, parties in Board proceedings routinely designate testimony and evidence as confidential when it is not, the rules were amended to codify Board practice and precedent that the Board will disregard the confidential designation when appropriate. Pursuant to Trademark Rule 2.116(g), 37 C.F.R. § 2.116(g), "[t]he Board may treat as not confidential that material which cannot reasonably be considered confidential, notwithstanding a designation as such by a party." As discussed below, we have done so in this case.

II.    The Record.

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), Applicant's application files. The record also includes the following items:

A. Stipulations to introduce evidence through notice of reliance:

1.  Discovery deposition of David V. Wiles, a third-party software programmer who worked for Opposer, with attached exhibits;[10] and

2.  Discovery deposition of Douglas Vetter, the Vice President, Assistant Secretary, and Assistant General Counsel for Apple, Inc., with attached exhibits.[11]

B. Opposer's testimony and evidence.

1.  Opposer's first notice of reliance on the following items:[12]

a.  Applicant's responses to Opposer's first set of interrogatories and request for production of documents;[13]

---

[10] 75 TTABVUE.

[11] 110 TTABVUE.

[12] 68 TTABVUE.

[13] 69 TTABVUE 3-21. Opposer designated the entire document as confidential but not all of Applicant's responses are confidential (*e.g.*, Interrogatory No. 2 requesting the identification of Applicant's trademark applications and registrations for the mark IPAD).

Generally, a party that has obtained documents through a response to a request for production of documents may not make the documents of record by notice of reliance alone. Trademark Rule 2.120(k)(3)(ii), 37 C.F.R. § 2.120(k)(3)(ii). On the other hand, a party's response that no documents exist that are responsive to a document request, may be made of record. *See City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.*, 106 USPQ2d 1668, 1674 n.10 (TTAB 2013) (responses to document production requests are admissible solely for purposes of showing that a party has stated that there are no responsive documents); *Pioneer*

b. Applicant's amended responses to Opposer's first set of interrogatories and request for production of documents;[14]

c. Applicant's responses to Opposer's third set of interrogatories;[15]

d. The file history for Opposer's application Serial No. 77958000 for the mark IPAD for "providing temporary use of a web-based software application for mobile-access database management whereby users can store and access their personal information";[16]

---

*Kabushiki Kaisha v. Hitachi High Technologies Am., Inc.*, 74 USPQ2d 1672, 1679 (TTAB 2005) (a party may rely on the response that responsive documents do not exist).

[14] 69 TTABVUE 23-28. Opposer designated the entire document as confidential but not all of Applicant's responses are confidential (*e.g.,* Applicant's response to Interrogatory No. 7 inquiring as to when and how Applicant became aware of Opposer's mark and Interrogatory No. 12 requesting the identity of the person most knowledgeable about Applicant's services).

[15] 69 TTABVUE 30-40. Opposer designated the entire document as confidential but not all of Applicant's responses are confidential (*e.g.,* Applicant's response to Interrogatory No. 22 requesting Applicant to identify its channels of trade and Interrogatory No. 23 requesting the marks under which Applicant offers the services described in the applications at issue).

[16] 68 TTABVUE 10-371. Applicant also submitted Opposer's application into the record, notwithstanding its stated belief that Opposer's application history is automatically part of the record pursuant to 37 C.F.R. § 2.122(b)(1). (90 TTABVUE 3). Applicant erred on both points. Only the file of an opposed application is automatically part of the record. Further, it was unnecessary for Applicant to include Opposer's application in Applicant's notice of reliance, after Opposer had already introduced it, because once testimony or evidence is introduced into the record, those items may be relied upon by either party for any purpose. Trademark Rule 2.122(a), 37 C.F.R. § 2.122(a) ("When evidence has been made of record by one party in accordance with these rules, it may be referred to by any party for any purpose permitted by the Federal Rules of Evidence.").

Portions of this exhibit are illegible (*e.g.,* 68 TTABVUE 58-77, 91-106, 182-200, 213-216, 230-246). It is the responsibility of the party making submissions to the Board via the electronic database to ensure that the testimony or evidence has, in fact, been properly made of record. *See Weider Publ'ns, LLC v. D&D Beauty Care Co.,* 109 USPQ2d 1347, 1350-51 (TTAB 2014); *Alcatraz Media,* 107 USPQ2d at 1758 n.16 ("the onus is on the party making the submissions to ensure that, at a minimum, all materials are clearly readable by the adverse party and the Board"); *Hard Rock Cafe Licensing Corp. v. Elsea,* 48 USPQ2d 1400, 1404 (TTAB 1998) ("It is reasonable to assume that it is opposer's responsibility to review the documents it submits as evidence to ensure that such submissions meet certain basic requirements, such as that

e. Online news articles purportedly to show the distinctiveness of Opposer's mark;[17] and

f. Excerpts from the discovery deposition of Thomas LaPerle, Director of the Trademark and Copyright Group for Apple, Inc., with attached exhibits;[18]

2. Testimony deposition of Brian Clements, Opposer's former President, current Vice President, and founder, with attached exhibits;[19]

3. Testimony deposition of Keith Clements, Opposer's President and Chief Executive Officer, with attached exhibits;[20]

4. Opposer's notice of reliance on the following items:[21]

a. Excerpts from Microsoft's website for Surface for Education and Surface for Business purportedly to show "Applicant's use or lack thereof, of the

---

they are legible and identified as to source and date."). Illegible evidence is given no consideration.

[17] 68 TTABVUE 373-404. According to Opposer, these articles were posted February 20, 2016, January 11, 2016, and June 16, 2014 (68 TTABVUE 3) and, as previously discussed, they are not relevant because they post-date Applicant's constructive priority dates.

[18] 68 TTABVUE 406-433. The portions of the LaPerle deposition designated as confidential are posted at 69 TTABVUE 42-107. Portions of the LaPerle deposition are improperly designated as confidential (*e.g.,* 69 TTABVUE 49-50 regarding types of trademark searches and 69 TTABVUE 54-55 regarding the services that Applicant has rendered under the IPAD mark).

[19] 70 TTABVUE. The portions of the Brian Clements deposition designated confidential are posted at 71 TTABVUE.

[20] 72 TTABVUE. The portions of the Keith Clements deposition designated confidential are posted at 73 TTABVUE.

[21] Opposer's notice of reliance includes Applicant's privilege logs. The privilege log produced by a party in a proceeding is not a document that may be introduced into evidence through a notice of reliance. Accordingly, we do not consider the privilege logs.

IPAD mark in services and the extent to which Applicant's use of [sic] IPAD mark for good [sic] can evidence acquired distinctiveness of the mark for services";[22]

b. Samsung press release published on the Internet purportedly to demonstrate "Applicant's use or lack thereof, of the IPAD mark in services and the extent to which Applicant's use of [sic] IPAD mark for good [sic] can evidence acquired distinctiveness of the mark for services";[23]

c. Excerpt from Samsung's website purportedly to show "Applicant's use or lack thereof, of the IPAD mark in services and the extent to which Applicant's use of [sic] IPAD mark for good [sic] can evidence acquired distinctiveness of the mark for services";[24]

d. Excerpts from the discovery deposition of Douglas Vetter, the Vice President, Assistant Secretary, and Assistant General Counsel for Apple, Inc., with attached exhibits;[25] and

---

[22] 112 TTABVUE 3 and 14-66.

[23] 112 TTABVUE 3 and 68. This document is not relevant because it post-dates Applicant's constructive priority date.

[24] 112 TTABVUE 3 and 73. This document is not relevant because it post-dates Applicant's constructive priority date.

[25] 113 TTABVUE 39. The entire Vetter deposition was designated confidential even though the entire testimony was not confidential (*e.g.,* Mr. Vetter's position, duties, and work history, the subpoena served to ensure the attendance of the witness, *etc.*). In any event, Mr. Vetter's testimony was not relevant to any issue in this proceeding.

    e. Excerpts from the discovery deposition of David Wiles with attached exhibits.[26]

C. Applicant's testimony and evidence.

    1. Notice of reliance on the following items:

    a. File histories of Applicant's application Serial Nos. 77982320, 77982321, and 77927453 purportedly to show the descriptiveness of the "I" prefix;[27]

    b. File histories of Apple, Inc.'s "I" prefix applications purportedly to show the descriptiveness of the "I" prefix;[28]

    c. File history of third-party applications for marks with an "I" prefix purportedly to show that the "I" prefix is merely descriptive;[29]

    d. Definitions of the "I" prefix;[30]

    e. Online articles regarding the meaning of the "I" prefix;[31]

    f. A definition of "web-based";[32]

    g. Third-party file histories for marks with a "Pad" suffix purportedly to show that the term "pad" is merely descriptive;[33]

---

[26] 112 TTABVUE 125-155.

[27] 90 TTABVUE 25-833.

[28] 91 TTABVUE 3 through 102 TTABVUE 283.

[29] 102 TTABVUE 285-806.

[30] 102 TTABVUE 808-840.

[31] 102 TTABVUE 842-850.

[32] 102 TTABVUE 852-855.

[33] 102 TTABVUE 857-1047.

h. A third-party website showing use of the "pad" suffix;[34]

i. A third-party website showing the use of "Notepad";[35]

j. Definitions of "pad";[36]

k. Online articles purportedly to show the use of "pad" and "notepad" in connection with notepad software;[37]

l. Online articles regarding bandwidth and web traffic purportedly to show that Opposer "could not support the multimedia services it claims to have offered";[38]

m. Online articles purportedly to show that the .mobi URLs "generated negligible consumer attention";[39]

n. Online articles purportedly to show that Opposer's "advertising was not effective and was insufficient to show secondary meaning";[40]

o. Printout from the WhoIs website (whois.com) for Opposer's website "ipadtoday.com" purportedly "to show when [Opposer] registered the domain name for its new ipadtoday.com website;[41]

---

[34] 102 TTABVUE 1049-1052.

[35] 102 TTABVUE 1054-1058.

[36] 102 TTABVUE 1060-1085.

[37] 103 TTABVUE 2-32.

[38] 90 TTABVUE 11 and 103 TTABVUE 34-62. The content of the online articles is hearsay and no exception applies and, therefore, cannot be used to establish facts.

[39] 90 TTABVUE 12 and 103 TTABVUE 64-79. The content of the online articles is hearsay and no exception applies and, therefore, cannot be used to establish facts.

[40] 90 TTABVUE 12 and 103 TTABVUE 81-100. The content of the online articles is hearsay and no exception applies and, therefore, cannot be used to establish facts.

[41] 90 TTABVUE 13 and 103 TTABVUE 102-104.

> p. Correspondence from Opposer's counsel stating that Opposer has no documents regarding the term "Pad" in IPAD as meaning "home";[42]
>
> q. Opposer's responses to Applicant's interrogatory Nos. 1-5;[43]
>
> r. Opposer's supplemental response to Applicant's interrogatory No. 1;[44]
>
> s. Excerpts from the discovery deposition of Brian Clements with attached exhibits;[45]
>
> t. Excerpts from the discovery deposition of Keith Clements with attached exhibits;[46] and
>
> u. Excerpts from the discovery deposition of David Wiles, Opposer's programming contractor, with attached exhibits;[47] and

2. Testimony deposition of Thomas LaPerle, Director of the Trademark and Copyright Group for Apple, Inc., with exhibits.[48]

---

[42] 90 TTABVUE 13 and 89 TTABVUE 106-109. We construe this to be an informal discovery response admissible pursuant to *City Nat'l Bank v. OPGI Mgmt. GP Inc./Gestion OPGI Inc.*, 106 USPQ2d at 1674 n.10.

[43] 103 TTABVUE 107-112.

[44] 103 TTABVUE 114-119.

[45] 103 TTABVUE 122-137. The portions of the Brian Clements discovery deposition designated as confidential are posted on 89 TTABVUE 125-477.

[46] 103 TTABVUE 140-583. The portions of the Keith Clements discovery deposition designated as confidential are posted on 89 TTABVUE 479-1007.

[47] 103 TTABVUE 585-748. The portions of the David Wiles discovery deposition designated as confidential are posted on 89 TTABVUE 1022-1179.

[48] 107 TTABVUE. The portions of the Thomas LaPerle deposition designated confidential are posted on 104 TTABVUE.

III.    Standing

Standing is a threshold issue that must be proven by a plaintiff in every *inter partes* case. To establish standing in an opposition or cancellation proceeding, a plaintiff must show "both a 'real interest' in the proceedings as well as a 'reasonable basis' for its belief of damage." *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) (quoting *ShutEmDown Sports, Inc., v. Lacy*, 102 USPQ2d 1036, 1041 (TTAB 2012) (citing *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999)); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982).

Opposer's evidence that its pending trademark application has been suspended pending resolution of Applicant's application Serial No. 77913563 for the mark IPAD demonstrates that Opposer has a reasonable belief that it would be damaged by registration of Applicant's mark, thus establishing its standing.[49] *Empresa Cubana*, 111 USPQ2d at 1062; *Lipton Indus.*, 213 USPQ at 189.

IV.    Priority

Section 2(d) of the Trademark Act permits an opposer to file an opposition on the basis of ownership of "a mark or trade name previously used in the United States … and not abandoned." Because Opposer filed its oppositions on the basis of its unregistered IPAD trademark, Opposer must establish proprietary rights in that

---

[49] 68 TTABVUE 10.

pleaded common-law mark. *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981).

> Under the rule of *Otto Roth,* a party opposing registration of a trademark due to a likelihood of confusion with his own unregistered term cannot prevail unless he shows that his term is distinctive of his goods, whether inherently or through the acquisition of secondary meaning or through "whatever other type of use may have developed a trade identity." *Otto Roth,* 640 F.2d at 1320, 209 USPQ at 43.

*Towers v. Advent Software Inc.,* 913 F.2d 942, 16 USPQ2d 1039, 1041 (Fed. Cir. 1990); *see also Herbko Int'l Inc. v. Kappa Books Inc.,* 308 F.3d 1156, 64 USPQ2d 1375, 1378 (Fed. Cir. 2002) (to establish priority, plaintiff must show proprietary rights in a mark that produces a likelihood of confusion); *Hoover Co. v. Royal Appliance Mfg. Co.,* 238 F.3d 1357, 57 USPQ2d 1720, 1721 (Fed. Cir. 2001) (because trade identity rights arise when a term is distinctive, opposer must prove that its mark is distinctive either inherently or through acquired distinctiveness).

Opposer's acquisition of proprietary rights in its purported IPAD mark must precede Applicant's actual or constructive use of its mark. *See Larami Corp. v. Talk to Me Programs Inc.,* 36 USPQ2d 1840, 1845 (TTAB 1995) (parties may rely on constructive use filing dates for purposes of priority); *Zirco Corp. v. Am. Tel. & Tel. Co.,* 21 USPQ2d 1542, 1543-45 (TTAB 1991) (constructive use in Section 7(c) of the Trademark Act establishes nationwide priority rights from the filing date of the application). In other words, because unregistered marks are not entitled to the presumptions established under Sections 7(b)-(c) of the Trademark Act, it is Opposer's burden to demonstrate that it owns a trademark that was used prior to Applicant's first use or constructive use of its mark and not abandoned. *Syngenta*

*Crop Prot. Inc. v. Bio-Chek LLC*, 90 USPQ2d 1112, 1119 (TTAB 2009) ("applicant may rely without further proof upon the filing date of its application as a 'constructive use' date for purposes of priority"); *Life Zone Inc. v. Middleman Grp. Inc.*, 87 USPQ2d 1953, 1960 (TTAB 2008) (while either party may rely on the filing date of its application as a "constructive use date" for purposes of priority, where the opposer's filing date was later in time it provided the opposer "no basis for … priority").

As previously noted above, Applicant is entitled to the benefit of Section 44(d) of the Trademark Act, 15 U.S.C. § 1126(d), under which Applicant may rely on the filing dates of its applications in foreign countries as its dates of constructive use, provided that the respective involved applications were filed in the USPTO within six months from the dates on which the corresponding applications were filed in the foreign countries (*i.e.,* July 16, 2009 and January 25, 2010). *See SCM Corp. v. Langis Foods Ltd.,* 539 F.2d 196, 190 USPQ 288, 293 (D.C. Cir. 1976) (Section 44(d) of the Trademark Act accords an applicant a "right of priority" for the six months following its foreign application, and an intervening use in the United States during that period cannot invalidate applicant's right to registration); *In re ETA Sys. Inc.,* 2 USPQ2d 1367, 1370 (TTAB 1987) ("The principal benefit of Section 44(d) is the right of priority which is created by the first filing of an application for registration of a mark in 'one of the countries described in paragraph (b)' on a date which is within six months from the filing date of an application in the United States for registration of the same mark" and, therefore, "the effective filing date of such an application would have been the date of filing of the first-filed application in France and that date would have been

the constructive use date of the mark for purposes of determining priority rights in the United States."); *Fioravanti v. Fioravanti Corrado S.R.L.,* 230 USPQ 36, 40 n.9 (TTAB 1986) (confirming that applicant's constructive date of first use is derived from the filing date of its foreign application). Thus, Applicant is entitled to rely on July 16, 2009 and January 25, 2010 as its constructive dates of use.[50]

Opposer, relying on *Gen. Foods Corp. v. MGD Partners*, 224 USPQ 479, 486 (TTAB 1984), contends that its mark's "distinctiveness is to be measured at the time of the decision regarding registrability or protectability, not at the time the opposition was filed."[51] Opposer's reliance on *General Foods Corp.* is misplaced. That case is inapposite because the claims in that case were genericness and mere descriptiveness under Section 2(e)(1), 15 U.S.C. § 1052, and any defense to such claims involving a claim of acquired distinctiveness would be assessed as of the time of trial. Here, by contrast, Opposer has brought a claim of likelihood of confusion under Section 2(d), and Applicant may rely on the constructive use filing dates for priority. In *General Foods Corp.* the Opposer was required only to prove that it had a right to use the term HIGH YIELD descriptively and not that it had a prior proprietary interest in

---

[50] Section 7(c) of the Trademark Act, 15 U.S.C. § 1057(c), provides that any judgment entered in favor of a party relying on constructive use -- whether that party is in the position of plaintiff or defendant in a Board proceeding -- is contingent upon the ultimate issuance of a registration to that party. If the applicant would only prevail based on an unperfected constructive use date, the Board will issue a decision contingent on registration and allow the application in question to go forward. If and when a registration is issued, appropriate action is taken to terminate the proceeding. *Zirco v. AT&T*, 21 USPQ2d at 1544.

[51] Opposer's Brief, p. 24 (114 TTABVUE 29).

the use of that term. Here, Opposer must, for its 2(d) claim, prove such a prior proprietary interest.

We reiterate that although Applicant's applications were published under the provisions of Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), and thus Applicant conceded that the mark is not inherently distinctive,[52] this does not change the above-noted principles for determining priority. *See Larami Corp. v. Talk to Me Programs Inc.*, 36 USPQ2d at 1846 (benefits of constructive use under Section 7(c) apply "even if the claim of acquired distinctiveness was made after the filing date of the application and even if the use on which the claim of distinctiveness was predicated was made mostly after the filing date of the application"); *see also Embarcadero Tech. Inc. v. RStudio Inc.,* 105 USPQ2d 1825, 1834 (TTAB 2013) ("For priority purposes, applicant, at the very least, can rely on the filing date of its trademark applications."); *Kraft Grp. LLC v. Harpole,* 90 USPQ2d 1837, 1841 (TTAB 2009) ("A party that has filed an intent-to-use application may rely on the filing date of its application to establish priority.").

Therefore, we must determine whether Opposer has established any proprietary rights in its pleaded IPAD mark prior to the priority filing dates of Applicant's applications (*i.e.,* July 16, 2009 and January 25, 2010). We focus our analysis on

---

[52] *See Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd.,* 840 F.2d 1572, 6 USPQ2d 1001, 1005 1988) ("Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the *statute* accepts a lack of inherent distinctiveness as an established fact.").

January 25, 2010 because if Opposer cannot show priority by that later date, it cannot show priority by the earlier July 16, 2009 date.

Opposer alleged that it had been using "its distinctive IPAD mark" "since at least as early as September 1, 2007.[53] Applicant, in its Answer, denied that Opposer was using the mark IPAD and asserted that Opposer was using the term "IPAD.mobi."[54] The record shows that prior to Applicant's constructive priority date, Opposer was using the "IPAD.mobi logo" reproduced below:[55]



We found no evidence that Opposer used IPAD as a service mark other than as a component of a composite like the one displayed above.[56] In its brief, Opposer identified Brian Clements' Deposition Exhibits 7 and 31 as demonstrating its use of IPAD as a "standalone mark."[57] In Exhibit 7, a printout of Opposer's website from the

---

[53] Notice of Opposition ¶2 (1 TTABVUE 4). Opposer repeated that claim in its brief identifying one of the issues as whether its IPAD mark was distinctive since 2007. Opposer's Brief, p. 6 (114 TTABVUE 11).

[54] Answer ¶2 (4 TTABVUE 2). *See also* Applicant's Brief, p. 6 (119 TTABVUE 8) (Opposer used IPAD.mobi prior to Applicant's constructive dates of first use and IPAD after those dates).

[55] The IPAD.mobi logo consists of the term IPAD.mobi displayed over the tagline "Your Mobile Internet Notepad." The letter "I" in the term IPAD is displayed as a stylized pen with a blue dot, the term "Pad" is displayed in blue upper case letters, and the term ".mobi" is displayed in lower case black letters.

[56] Opposer pleaded and argued at trial that it owned rights in IPAD alone. Opposer did not separately plead or argue that there is a likelihood of confusion between its IPAD.MOBI and design mark and Applicant's IPAD mark.

[57] Opposer's Brief, pp. 10-11 (114 TTABVUE 15-16). Brian Clements Dep. Exhibit 31 (70 TTABVUE 598) is a printout from "adwords.google.com" from March 15, 2011 through March

WayBackMachine website (web.archive.org) (October 28, 2007), Opposer displays a similar iPad.mobi logo and, in text, refers to "iPad.mobi" (*e.g.,* "iPad.mobi is the first of its kind for the mobile web!").[58]

The term "IPAD" flows from the initial "I" as a pen design, and the "I" pen design is an integral part of the term IPAD. The stylized pen forming the letter "I" in IPAD and the top level domain name ".mobi" in the same style print as "Pad" are interrelated elements of a single unified mark creating a single commercial impression. *See In re Chem. Dynamics Inc.*, 839 F.2d 1569, 5 USPQ2d 1828 (Fed. Cir. 1988) (design of medicine dropper and droplet does not create separate commercial impression from the wording and watering can). Opposer has not shown that IPAD creates a separate commercial impression from the composite iPad.mobi logo. Even if we were to view the use of iPad.mobi buried in the text as service mark use, again, Opposer has not established that IPAD creates a separate commercial impression from the term iPad.mobi. Simply stating that .mobi is a generic TLD is not sufficient to show that the term IPAD creates a separate commercial impression on potential consumers when used in connection with a web-based software application where users may access and store personal information.

The IPAD.mobi logo and iPad.mobi are more than just IPAD *per se* and, therefore, Opposer failed to prove that it has used the term IPAD as a "standalone mark" prior

---

28, 2011. The exhibit is not relevant because it presents evidence subsequent to Applicant's constructive filing date, and it does not show Opposer using IPAD as a mark.

[58] Brian Clements Dep., Exhibit 7 (70 TTABVUE 359).

to Applicant's constructive filing date.[59] Even assuming IPAD has a separate commercial impression, such that Opposer's use of the IPAD.mobi logo or iPad.mobi can be considered as demonstrating use of IPAD alone, for the reasons set forth below, Opposer has failed to prove that it had a proprietary interest in IPAD alone.

A. Whether Opposer has proven its use of IPAD is distinctive?

Opposer has not asserted or shown that its pleaded mark should be presumed to be inherently distinctive. While Opposer has the burden of proving the distinctiveness of its pleaded unregistered mark, we will first consider whether the asserted mark is merely descriptive and lacks acquired distinctiveness. We consider the descriptiveness question first because the more descriptive a term is the more evidence of acquired distinctiveness must be shown to overcome the evidence of descriptiveness. Thus, weighing the evidence of acquired distinctiveness includes an assessment of how much such evidence is necessary.

A term is "merely descriptive" within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), if it "immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). "On the other hand, if one must exercise mature thought or follow a multi-stage reasoning process in order to determine what product or service

---

[59] Such proof is necessary because Opposer only asserted rights in IPAD by itself and not the IPAD.mobi logo as a whole.

characteristics the term indicates, the term is suggestive rather than merely descriptive." *In re Tennis in the Round, Inc.*, 199 USPQ 496, 498 (TTAB 1978); *see also In re Shutts*, 217 USPQ 363, 364-65 (TTAB 1983); *In re Universal Water Sys., Inc.*, 209 USPQ 165, 166 (TTAB 1980).

Whether a mark is merely descriptive cannot be determined in the abstract or on the basis of guesswork. Descriptiveness must be evaluated "in relation to the particular goods [or services] for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods [or services] because of the manner of its use or intended use." *In re Chamber of Commerce of the U.S.*, 102 USPQ2d at 1219 (quoting *In re Bayer AG*, 82 USPQ2d at 1831). In other words, we evaluate whether someone who knows what the goods or services are will understand the mark to convey information about them. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012); *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002).

When two or more merely descriptive terms are combined, the determination of whether the combined mark also has a merely descriptive significance turns on whether the combination of terms evokes a non-descriptive commercial impression. Generally, if each component retains its merely descriptive significance in relation to the goods or services, the combination results in a composite that is itself merely descriptive. *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 71 USPQ2d 1370, 1372 (Fed. Cir. 2004) (quoting *Estate of P.D. Beckwith, Inc. v. Comm'r*, 252 U.S. 538, 543

(1920)); *see also In re Tower Tech, Inc.*, 64 USPQ2d at 1318 (SMARTTOWER merely descriptive of commercial and industrial cooling towers); *In re Sun Microsystems Inc.*, 59 USPQ2d 1084 (TTAB 2001) (AGENTBEANS merely descriptive of computer programs for use in developing and deploying application programs); *In re Putman Publ'g. Co.*, 39 USPQ2d 2021 (TTAB 1996) (FOOD & BEVERAGE ONLINE merely descriptive of news and information services in the food processing industry).

On the other hand, a mark comprising a combination of merely descriptive components is registrable if the combination of terms creates a unitary mark with a non-descriptive meaning, or if the composite has an incongruous meaning as applied to the goods or services. *See In re Colonial Stores Inc.*, 394 F.2d 549, 157 USPQ 382 (CCPA 1968) (SUGAR & SPICE for "bakery products"); *In re Shutts*, 217 USPQ 363 (SNO-RAKE for "a snow removal hand tool having a handle with a snow-removing head at one end, the head being of solid uninterrupted construction without prongs"). In this regard, "incongruity is one of the accepted guideposts in the evolved set of legal principles for discriminating the suggestive from the descriptive mark." *In re Shutts,* 217 USPQ at 365; *see also In re Tennis in the Round, Inc.*, 199 USPQ at 498 (the association of applicant's mark TENNIS IN THE ROUND with the phrase "theater-in-the-round" creates an incongruity because applicant's services do not involve a tennis court in the middle of an auditorium). Thus, we must consider the issue of descriptiveness by looking at the mark in its entirety. *See In re Phoseon Tech. Inc.*, 103 USPQ2d 1822, 1823 (TTAB 2012); *Grand Canyon West Ranch LLC v. Hualapai Tribe*, 88 USPQ2d 1501, 1505 (TTAB 2008).

Since prior to July 16, 2009, the letter "I" placed before a word or phrase may mean Internet-based or enabled.[60] One article in the record explains:

> Popular domain names prefixes – "E" and "I"
>
> Posted on December 12, 2008
>
> In addition to a domain placing value on the shortness of the word, ease to spell, commercial appeal, and organic capacity to generate natural traffic, today's domain names are being valued for the branding potential. The domain name sale iReport although not an organic or dictionary term alone, is actually preferred as a highly brandable term, in that it has a popular pre-fix "i" which indicates that "report" to be online.
>
>    \*  \*  \*
>
> The two primary prefixes are "E", for electronic, and "I", for Internet. Both indicate the word or phrase to be accessible online. Because of that, in terms of branding, an i or e combined with a commercial term are highly desirable.
>
>    \*  \*  \*
>
> One of the details that make a domain with a prefix more valuable for a brand, is the ability to simply promote the name without the use of ".com" in the promotion. If a domain name owner had report.com he would be forced to use the .com to indicate it was on the net at that address, however to register domain names with a one letter prefix does not need to use the ".com".
>
> Someone could promote "iReport" as a brand, and assuming it was a world class brand, visitors would know they could find it at "iReport.com" without seeing the .com.[61]

---

[60] AcronymFinder.com (January 5, 2004) (102 TTABVUE 404).

[61] *LuckyRegister.com* based on *Wikipedia*. (102 TTABVUE 842). Although the document from which the quoted excerpt is derived is hearsay, its probative value lies in the fact that it conveys the perception of the author and the readers' exposure to it.

Third-party registrations can be used in the manner of a dictionary definition to illustrate how a term is perceived in the trade, industry, or ordinary parlance. *Juice Generation, Inc. v. GS Enters. LLC,* 794 F.3d 1334, 115 USPQ2d 1671, 1675 (Fed. Cir. 2015). Representative registrations owned by Applicant's parent corporation and licensee, Apple, Inc.,[62] registered before July 2009 and still active, showing the use of "I" formative marks for Internet-based or enabled goods or services are listed below.[63]

| Mark | Reg. No. | Goods/Services |
|---|---|---|
| ICHAT | 2090641 | Providing access to server environments over a global computer network for the transfer and dissemination of a wide range of information |
| IBOOKS | 2446634 | Software to support and create interactive, user-modifiable electronic books |
| ICAL | 2797675 | Computer software for data synchronization, electronic mail, data sharing, contact information management, task list management, automated reminders, and scheduling and for facilitating publication of information to a website |
| IADS | 3515184 | Transmission of sound, video and information over the Internet using video flash overlay technology |
| IDISK | 3638141 | Providing an online portal for users to remotely manage, administer, modify and control user-provided data, text, images, video and audio over the Internet |
| ITUNES | 3532063 | Providing a web site and database featuring music, videos, television programs, motion pictures, current event and entertainment news, etc. |
| iPhone | 3669402 | Handheld mobile digital electronic devices for the sending and receiving of telephone calls, electronic mail, and other digital data, for use as a digital format audio player, and for use as a handheld computer, personal digital assistant, |

---

[62] LaPerle Testimony Dep., p. 32 (104 TTABVUE 33 and 107 TTABVUE 33).

[63] Application Serial No. 77927446, October 25, 2010 Response to Office Action (TSDR 48, 50, 66, 81, 85, 288, 389). Citations to the TSDR database are in the .pdf format.

| Mark | Reg. No. | Goods/Services |
|------|----------|----------------|
|      |          | electronic organizer, electronic notepad, and camera |

Excerpts from third-party publications and websites listed below show the "I" prefix used to refer to Internet-based or enabled goods or services;

- Computer Reseller News

  Company Unveils New Channel Program - - VARs play domain-name game (June 14, 1999)

  Domain names with an "I-" prefix where the "I" stands for Internet, as in "I-notebooks" – are hot now, along with the more familiar "e-" prefixes, Cuence said.

- Wired (wired.com)

  Grads Want to Study on EMacs, Too (April 30, 2002)

  The "e" in eMac – Apple's new 17-inch screen, all-in-one G4 machine – stands for "education." The computer is a 15-inch iMac – whose "i" stood for "Internet," among other words – and it's ostensibly only available to teachers, students, school administrators and few others who can prove they're peripherally connected with learning.[64]

- iPaint (ipant.sourceforge.net) (©2008 Mac-Fun)

  IPaint Painting Application for Mac

  iPaint is a painting application for Mac OS X. It is based off a former painting application called Paintbrush. … Paintbrush is open source and full credits are still given in iPaint.[65]

---

[64] Application Serial No. 77927446, August 18, 2011 Office Action (TSDR 7).

[65] Application Serial No. 77927446, August 18, 2011 Office Action (TSDR 30).

The word "Pad" is defined as, *inter alia,* "a collection of sheets of paper glued together at one end."[66] While other definitions of the word Pad exist, they are inapposite to Opposer's service of "providing temporary use of a web-based software application for mobile-access database management whereby users can store and access their personal information."

The word "Notepad" is defined as "a *pad* of blank pages for writing notes." (Emphasis added).[67]

The "I" prefix means Internet-enabled or accessible and the word "Pad" refers to a notepad for writing notes. When the "I" prefix is combined with the "Pad" suffix, and when considered in conjunction with Opposer's services, the combination directly refers to an Internet-enabled or accessible medium for storing and accessing information, as one can do with a notepad. The combined term, IPAD, does not create a non-descriptive or incongruous meaning, and, thus, it is not an inherently distinctive mark. When used in connection with a web-based software application for mobile-access databases management whereby users can store and access their personal information, the term IPAD directly conveys to consumers the purpose and function of Applicant's services.

The descriptive meaning of the term IPAD is corroborated by Opposer's own use, as early as September 2007, when it began "offering to-do lists, grocery lists, and

---

[66] **Merriam Webster's Collegiate Dictionary,** p. 832 (10th ed. 2000). The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

[67] **Random House Webster's Unabridged Dictionary**, p. 1326 (2nd ed. 2001).

event lists, which is like a calendar."[68] Opposer touted its service as "allow[ing] users to take and store mobile notes."[69] Over time, Opposer "included [directories], file storage, could do photos, PDFs, any file type. We had a gift list, holiday list."[70] "IPAD.mobi will be simply an Internet capable notepad site."[71]

The services were rendered "[t]hrough an online portal, IPAD.mobi."[72]

> Q. How did a user of the services access the services in September of 2007?
>
> A. They would first register it by signing their name and their email and then an account would be created and then every time they used the site they would have to log in with their name and password.
>
> Q. Once a user logged in with a name and password, can you briefly describe to us what could a user do at that point?
>
> A. Then they could store their to-do list, their grocery list, files, photos. They could do calendars, appointment reminders, and pretty much anything you could type in.[73]

---

[68] Brian Clements Dep., p. 13 (70 TTABVUE 15).

[69] Opposer's response to Applicant's interrogatory No. 1 (103 TTABVUE 108).

[70] Brian Clements Dep., p. 13 (70 TTABVUE 15).

[71] Brian Clements Dep., p. 118 and Applicant's Exhibit 2 (70 TTABVUE 120 and 641). *See also* Brian Clements Dep., Applicant's Exhibit 4 (70 TTABVUE 659) ("iPad is going to be an online mobile notepad (with login), for example … you can type your notes on your pc or phone ect. [sic].") (January 31, 2007); Brian Clements Dep. Applicant's Exhibit 6 (70 TTABVUE 669) ("I also may use the pad under one of my other names to avoid any legal dispute initially (but I searched the trademarks and I don't think ipad interferes with any others for a 'mobile notepad use'.")).

[72] Brian Clements Dep., p. 14 (70 TTABVUE 16). ".mobi" "is a top level domain name that stands for mobile top - - MTOD. It stands for mobile top level domain," similar to .com, .org or .info. *Id.* p. 16 (72 TTABVUE 18).

[73] Brian Clements Dep., p. 14-15 (70 TTABVUE 16-17).

When Opposer began rendering its services, it displayed its IPAD logo mark with the tagline "Your Mobile Internet Notepad."[74] An excerpt from Opposer's website displaying Opposer's mark is reproduced below:[75]



© iPad.mobi 2007

Opposer used the tagline "Your Mobile Internet Notepad" because "people were suggesting this notepad you can do task and calendar work and so it - - people would be tied right in."[76] In this regard, Opposer, for its own purposes, referred to the

---

[74] Brian Clements Dep., pp. 32-33 (70 TTABVUE 34-35).

[75] Brian Clements Dep. Exhibit 1 (70 TTABVUE 350). The display produced above was retrieved from Opposer's application for purposes of clarity and is an exact reproduction of Brian Clements Dep. Exhibit 1.

The excerpt consists of the IPAD.mobi logo displayed over numbered menu items, namely, login, register, about and links. The IPAD.mobi logo consists of the term IPAD.mobi displayed over the tagline "Your Mobile Internet Notepad." The letter "I" in the term IPAD is displayed as a stylized pen with a blue dot, the term "Pad" is displayed in blue upper case letters, and the term ".mobi" is displayed in lower case black letters.

[76] Brian Clements Dep., p. 120 (70 TTABVUE 122). *See also* Opposer's supplemental response to Applicant's interrogatory No. 1 (103 TTABVUE 116) (Opposer "therefore initially used the tag line 'Your mobile internet notepad' to signal the nature of the services, which was not otherwise readily ascertainable.").

Opposer's explanation that it used the tagline "Your mobile internet notepad" "because [Brian Clements] did not believe that customers and potential customers would understand the nature of the services being offered," (Opposer's Brief, p. 15 (114 TTABVUE 15)) does not persuade us that IPAD in connection with Opposer's services is suggestive because, as noted above, the test is not whether a potential customer seeing the mark can guess what the services are; rather the test is whether someone who knows what the services are will understand the mark to convey information about them. To the contrary, the admission that "mobile internet notepad" would assist consumers in understanding Opposer's services is evidence that IPAD is merely descriptive. *In re N.C. Lottery,* 866 F.3d 1363, 123 USPQ2d

IPAD.mobi service as a "mobile notepad" candidly admitting "[t]here was really nothing else to call it."[77]

After Opposer launched the IPAD.mobi website, it applied to be a .mobi Showcase, a vehicle for promoting the best websites with a .mobi top level domain URL.[78] In its application, Opposer explained that the purpose of the IPAD.mobi website is "[t]o make an easy accessible notepad on the go."[79]

Opposer's own descriptive uses of IPAD as a "mobile Internet notepad" show that IPAD was a descriptive designation for notepad computers when Opposer first began using the mark. In other words, Opposer's use of IPAD in connection with "offering to-do lists, grocery lists, and event lists, which is like a calendar" directly conveyed to consumers the purpose or function of Opposer's services (*i.e.,* this application is an Internet notepad). *Cf. In re N.C. Lottery,* 123 USPQ2d at 1710 ("the TTAB did not err by considering the explanatory text of the specimens in the descriptiveness inquiry.").

In view of the foregoing, we find that as of January 25, 2010, Opposer's use of IPAD was merely descriptive.

B. Whether Opposer's use of IPAD resulted in acquired distinctiveness?

Acquired distinctiveness is generally understood to mean an acquired "mental association in buyers' minds between the alleged mark and a single source of the

---

1707, 1710 (Fed. Cir. 2017) ("the TTAB did not err by considering the explanatory text of the specimens in the descriptiveness inquiry.").

[77] Brian Clements Dep., p. 122 (70 TTABVUE 124).

[78] Brian Clements Dep., p. 61 (70 TTABVUE 63).

[79] Brian Clements Dep. Applicant's Exhibit 5 (70 TTABVUE 666).

product." 2 J. Thomas McCarthy, **McCarthy on Trademarks and Unfair Competition** § 15:5 (5th ed., September 2017 Update). That is, "[t]he relevant public understands the primary significance of the mark as identifying the source of a product or service rather than the product or service itself." *In re Steelbuilding.com*, 75 USPQ2d at 1422; *see also See Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1729 (Fed. Cir. 2012). Our analysis and determination of whether Opposer's mark has acquired distinctiveness is based on all of the evidence considered as a whole, including any evidence of advertising expenditures, sales success, length and exclusivity of use, unsolicited media coverage, and consumer studies (linking the name to a source). *In re La. Fish Fry Prods., Ltd.,* 797 F.3d 1332, 116 USPQ2d 1262, 1265 (Fed. Cir. 2015); *In re Steelbuilding.com*, 75 USPQ2d at 1424; *Cicena Ltd. v. Columbia Telecomms. Grp.*, 900 F.2d 1546, 14 USPQ2d 1401, 1406 (Fed. Cir. 1990). On this list, no single type of evidence is determinative. *In re Tires, Tires, Tires Inc.*, 94 USPQ2d 1153, 1157 (TTAB 2009); *see also In re Ennco Display Sys. Inc.*, 56 USPQ2d 1279, 1283 (TTAB 2000) ("Direct evidence [of acquired distinctiveness] includes actual testimony, declarations or surveys of consumers as their state of mind. Circumstantial evidence, on the other hand, is evidence from which consumer association might be inferred, such as years of use, extensive amount of sales and advertising, and any similar evidence showing wide exposure of the mark to consumers.").

For purposes of determining whether Opposer's use of IPAD had acquired distinctiveness prior to Applicant's constructive use date, Opposer had been using

IPAD from September 2007 through July 16, 2009 or not quite two years. By the end of 2007, Opposer had a "couple hundred" subscribers; by the end of 2008, the number of subscribers was in the "hundreds"; and by the end of 2009, Opposer had between 1200-1500 subscribers.[80] Although Opposer confirmed that people were using the service, Opposer conceded that it had no way of knowing how many subscribers were actively using the service.[81] The low subscription rate is endemic of the .mobi URLs domain names because unlike sites using the .com or .org gTLDs, the .mobi sites never became "mainstream."[82] In this regard, Opposer's IPAD.mobi website never received more than 100 visits in one day from September 2007 through January 25, 2010.[83] "As of 2010 when [Opposer] filed its application to register the IPAD mark, its revenues were small and it was not profitable."[84]

Opposer's advertising for its IPAD services was limited to the Internet through the online agency AdMob.[85] In this regard, through March 2013, Opposer spent

---

[80] Brian Clements Testimony Dep., pp. 172-175 (70 TTABVUE 174-177).

[81] Brian Clements Testimony Dep., p. 191 (70 TTABVUE 193).

[82] Brian Clements Testimony Dep., p. 195 (70 TTABVUE 197).

[83] Brian Clements Testimony Dep, pp. 213-218 (70 TTABVUE 215-220).

[84] Applicant's Brief, p. 13 (114 TTABVUE 19) (citing Brian Clements Testimony Dep., pp. 86-100 (70 TTABVUE 88-102) and Keith Clements Testimony Dep., pp. 20 and 26-27 (72 TTABVUE 22 and 28-29 )).

[85] Brian Clements Testimony Dep., pp. 56, 247-248 (70 TTABVUE 58, 249-250). "AdMob" "is a mobile advertising platform" that "allowed people to actually place ads on their site to generate income and also advertise on other people's sites to get traffic." AdMob placed advertisements on websites which people could click on. *Id.* at p. 20 and 39 (70 TTABVUE 22 and 41). Mr. Clements testified that if a person clicked on your advertisement, AdMob would charge you from 1 to 20 cents. Clements Dep., p. 39 (70 TTABVUE 41). If Opposer was charged a penny a click, then Opposer's advertisement was accessed at most 41,200 times from September 2007 through March 2013 or 615 times per month (41,200 divided by 67 months).

approximately $412 advertising its IPAD.mobi website.[86] The advertisements placed through AdMob appeared at either the top or bottom of flip phones on which they were displayed.[87]

Opposer asserts that it received unsolicited marketplace recognition of its IPAD services through the .mobi Showcase, purportedly to promote the best sites on the .mobi platform.[88] However, Opposer could not identify how many people saw its IPAD.mobi website on the showcase website.[89]

Opposer's advertising expenditures and subscription enrollment have been negligible, indicating that Opposer has not been successful in educating the public to associate the proposed mark with a single source. In this regard, there is no testimony or evidence demonstrating that the relevant public, as of July 16, 2009, understood that the primary significance of the mark IPAD identified Opposer as the source of the "mobile internet notepad" services rather than the services themselves. *In re Steelbuilding.com*, 75 USPQ2d at 1422; *see also Coach Servs. Inc. v. Triumph Learning LLC*, 101 USPQ2d at 1729.

In view of the foregoing, we find that the evidence falls short of establishing acquired distinctiveness.

---

[86] Brian Clements Testimony Dep., pp. 248-250 (70 TTABVUE 250-252).

[87] Brian Clements Testimony Dep., pp. 252-253 (70 TTABVUE 254-255).

[88] Opposer's Brief, p. 11 (114 TTABVUE 16). *See also* Brian Clements Dep., pp. 17-18, 61 (70 TTABVUE 19-20, 63).

[89] Brian Clements Dep., p. 270 (70 TTABVUE 272). Mr. Clements also testified that "a lot" of people saw the IPAD.mobi showcased on the .mobi site. *Id.*

Opposer failed to prove that it used IPAD as a standalone mark prior to Applicant's July 16, 2009 or January 25, 2010 constructive priority dates. Even assuming the evidence of record regarding use of IPAD.mobi, iPad.mobi, or variations employing design elements, can be considered as demonstrating use of IPAD as a standalone mark by Opposer, we nonetheless find that the term IPAD is merely descriptive of Opposer's services and that Opposer has failed to establish that such term had acquired distinctiveness as of Applicant's July 16, 2009 or January 25, 2010 constructive priority dates. Because Opposer has not shown that it has a prior proprietary interest in the IPAD mark, Opposer's claim of likelihood of confusion under Section 2(d) fails.

**Decision**: Judgment in favor of applicant dismissing the opposition is hereby entered, subject to Applicant's establishment of constructive use.

The time for filing an appeal or for commencing a civil action will run from the date of this decision. *See* Trademark Rules 2.129(d) and 2.145, 37 C.F.R. §§ 2.129(d) and 2.145. When Applicant's mark registers or the application(s) become(s) abandoned, Applicant should inform the Board, so that appropriate action may be taken to terminate this proceeding.